IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA**

v.                                                               **CRIMINAL NO. 3:21cr14-CWR-FKB2**

**TEMENTA ROBINSON**

## MOTION FOR DEVIATION FROM THE UNITED STATES SENTENCING GUIDELINES AND TO REJECT BASE OFFENSE LEVEL DISTINCTION BETWEEN METHAMPHETAMINE AND "'ACTUAL' METHAMPHETAMINE"

### I.      Introduction

**COMES NOW**, Mr. Tementa Robinson, by and through his undersigned counsel of record and files this, his Motion for Deviation from the United States Sentencing Guidelines and to Reject Base Offense Level Distinction Between Methamphetamine and "'Actual' Methamphetamine." The defense previously objected to the base offense level reported in the Mr. Robinson's original Presentence Investigation Report ("PSIR") and the revised version of that report on the grounds that the United States Sentencing Guidelines arbitrarily and capriciously distinguish between methamphetamine and so-called "'actual' methamphetamine" in an empirically unjustified manner. The result of this distinction is a substantially varied base offense level resulting from an approximately ten-to-one sentence disparity between crimes involving so-called "'actual' methamphetamine" as compared to crimes involving methamphetamine, all other factors and circumstances surrounding such crimes being equal. We ask this Court to reject that supposed distinction and join a number of other federal courts[1] around the country that have begun

---

[1] *See United States v. Scott Michael Harry*, 2:17cr1017LTS [Ct. Doc. No. 108, June 6, 2018, in the United States District Court for the Northern District of Iowa; Northern Division]; *see also See United States v. Tyson Scott Nawanna*, 321 F. Supp. 3d 943, 947 (N.D. Iowa 2018) [Ct. Doc. No. 54, May 1, 2018, in the United States District Court for the Northern District of Iowa, Western Division; *United States v. Jose Alberto Rodriguez, Jr.*, 3:17cr31TMB [April 5, 2019, in the United States District Court for the District of Alaska (Citing Other Courts);

sentencing defendants in line with the methamphetamine-related guidelines, even when the purity level of the methamphetamine is of a purity level, eighty percent or higher, that would arguably fall within that range for which the Guidelines would define the substance as "'actual' methamphetamine." For the reasons that follow, the defense moves this Court to calculate Mr. Robinson's guideline sentence without regard to substance purity and hold his Base Offense Level as a 26 as if the substance was classified as methamphetamine, rather than a Base Offense Level of 32 based on the substance being so-called "'actual' methamphetamine."

## II.     Pertinent Facts and Procedural History

On December 21, 2021, Mr. Robinson pleaded guilty to Possession with Intent to Distribute Fifty Grams or More of Methamphetamine, in violation of Title 21 U.S.C. § 841(a)(1). On February 15, 2022, the undersigned received Mr. Robinson's original PSIR from the United States Probation Office. The undersigned subsequently submitted Mr. Robinson's objections to that PSIR. Those objections included Mr. Robinson's objection to Numbered Paragraph 41 of the PSIR. That paragraph set Mr. Robinson's Base Offense Level at 32 pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(4) because (1) the amount of methamphetamine attributable to Mr. Robinson's conduct was 214.4 grams, and (2) the substance at issue reportedly had a purity level between 96% and 97%.[2] The defense did not object to the quantity of the substance or the purity level as determined by the laboratory that tested the substance for purity. The objection was based on the fact that the Base Offense Level of 32 for "'actual' methamphetamine" required that the offense involved "at least 150 grams but less than 500 grams" of "'actual' methamphetamine," but that if the offense instead involved "at least 150 grams but less than 500 grams" of methamphetamine,

---

*United States v. Hartle*, No. 4:16-cv-00233-BLW, 2017 WL 2608221 at *1 (D. Idaho June 15, 2017); *United States v. Ibarra-Sandoval*, 265 F.Supp 3d 1249, 1255 (D.NM 2017).
[2] U.S.S.G. § 2D1.1(a)(5) and (c)(4).

Mr. Robinson's Base Offense Level would have been a 26 pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(7).[3] The undersigned argued on Mr. Robinson's behalf that the Sentencing Guidelines' policy statement regarding this ten-to-one distinction and its resulting huge distinction in base offense levels was unjustified and not based on empirical data.

On March 22, 2022, Mr. Robinson appeared before this Court for his sentencing hearing in this matter. The Court resolved several issues that remained in dispute concerning Mr. Robinson's PSIR and sentencing guidelines calculations. The Court, however, continued the sentencing hearing to give the parties additional time to submit briefing on this remaining issue regarding whether the Court should sentence Mr. Robinson on this supposed distinction between methamphetamine and "'actual' methamphetamine." Mr. Robinson respectfully requests this Court reject that purity level distinction in sentencing him because the facts of this case, and all credible data gathered since the time the Sentencing Guidelines Commission promulgated these rules and related policy statements demonstrate that the purity level of methamphetamine is not indicative of Mr. Robinson's culpability or proximity to the actual importation of the substances at issue here.

### III.     Legal Analysis

"The Sentencing Guidelines were enacted to promote the dual goals of uniformity and proportionality in sentencing."[4] "The United States Sentencing Commission, established in 1984 by the Sentencing Reform Act, is responsible for creating the Guidelines for all federal offenses."[5] "Although originally intended to be mandatory, following the Supreme Court's decision in *United*

---

[3] U.S.S.G. § 2D1.1(a)(5), (c)(4), and (c)(7).
[4] *Rodriguez, Jr.*, 3:17cr31TMB at 2 (citing Title 28 U.S.C. §§ 991(a), 991(b)(1), 994(f), and Title 18 U.S.C. 3553(a)).
[5] *Id,* (citing *Mistretta v. United States*, 488 U.S. 361, 362 (1989) and Title 18 U.S.C. § 3551 *et seq.*)).

*States v. Booker*,⁶ the Guidelines now serve an advisory purpose, and are the starting point and the initial benchmark in sentencing criminal defendants."⁷

"Pursuant to the Supreme Court's decision in *United States v. Booker*, the Sentencing Guidelines are one factor among several courts must consider in determining an appropriate sentence."⁸  "While the Guidelines should be the starting point and initial benchmark of the sentencing process, and must be considered as a factor in sentencing, they are not the only consideration."⁹  Once the Court accurately calculates the applicable sentencing guidelines range for a given defendant, the Court must then consider all of the factors listed in Title 18 U.S.C. § 3553(a) to make an "individualized assessment based on the facts presented."¹⁰  "In making this determination, the Court may not presume that the Guidelines range is reasonable."¹¹  "The Supreme Court has emphasized this point, noting '[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable,' and that '[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.'"¹²

"Sentencing judges may impose sentences that vary from the Guidelines range based on a policy disagreement with the Guidelines."¹³  *Spears v. United States* makes clear that any such deviations need not be "based on an individualized determination" and that district courts can "reject and vary categorically" from certain Guidelines for policy reasons, including policy derived

---

⁶ *Rodriguez, Jr.*, 3:17cr31TMB at 2 (internal quotations omitted); *United States v. Booker*, 543 U.S. 220, 246 (2005).
⁷ *Rodriguez, Jr.*, 3:17cr31TMB at 2 (internal quotations omitted); *Gall v. United States*, 552 U.S. 38, 49 (2007).
⁸ *Rodriguez, Jr.*, 3:17cr31TMB at 4 (internal quotations omitted); *Kimbrough v. United States*, 552 U.S. 85, 90 (2007) (citing *Booker*, 543 U.S. at 244).
⁹ *Rodriguez, Jr.*, 3:17cr31TMB at 4 (internal quotations omitted); *Gall*, 552 U.S. at 49; *see also Kimbrough*, 552 U.S. at 90-91.
¹⁰ *Gall*, 552 U.S. at 50.
¹¹ *Id*.
¹² *Hayes*, 948 F.Supp.2d at 1013 (quoting *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam)).
¹³ *Hayes*, 948 F.Supp.2d at 1014 (citing *Spears*, 555 U.S. at 263-67 and *Kimbrough*, 552 U.S. at 109-10).

from or based on the Section 3553(a) factors.[14]  "Ultimately, sentencing judges can reject *any* Sentencing Guideline, provided that the sentence imposed is reasonable."[15]  "This is especially true where the Guidelines provisions 'do not exemplify the Commission's exercise of its characteristic institutional role[,]' which is 'to base its determinations on empirical data and national experience.'"[16]

The methamphetamine Guidelines are based on a flawed premise, set out in U.S.S.G. § 2D1.1, cmt. n.27(C), that drug purity is a proxy for culpability."[17]  The ten-to-one ratio at issue is based on an outdated premise that there is a supposed link between the drug purity level of methamphetamine and culpability, particularly with respect to level of involvement in drug trafficking and proximity to importation.[18]  The comment at Note 27(c) states "[t]hat a defendant in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximately to the source of the drugs."[19]  Empirical data and national trends bear out, however, that "[e]veryone involved with methamphetamine today, whether a drug lord or an end user, has access to a substantially pure, uncut product."[20]

There is no empirical basis for the Commission's decision to treat offenses involving pure methamphetamine more severely than offenses involving methamphetamine mixture, so that the difference in treatment of the two is entitled to little deference.[21]  "[B]ecause today's

---

[14] *Spears*, 555 U.S. at 265.
[15] *Rodriguez, Jr.*, 3:17cr31TMB at 2 (quoting *United States v. Mitchell*, 624 F.3d 1023, 1029 (9th Cir. 2010)) (emphasis in original).
[16] *United States v. Austin*, No. 1:18cr23-BLW, 2018 WL 4087987, at *2 (D. Idaho Aug. 27, 2018) (citing *Kimbrough*, 552 U.S. at 109)).
[17] *United States v. Hendricks*, 307 F. Supp.3d 1104, 1106-07 (D. Idaho 2018) ("This has led some courts to conclude that the methamphetamine guideline ranges were 'a product of political calculation and compromise rather than an empirical analysis,' asserting that no 'empirical data from the Sentencing Commission or in the academic literature…would justify the ratio.")
[18] *Nawanna*, 321 F. Supp. 3d at 947.
[19] U.S.S.G. § 2D1.1 cmt. n.27(C)
[20] *See Hendricks*, 307 F. Supp.3d at 1106-07.
[21] *See Hayes*, 948 F.Supp.2d at 1027.

methamphetamine is substantially pure, purity is not a proxy for relative culpability concerning average purity of one gram of methamphetamine."[22] "All methamphetamine seized from a defendant or his co-conspirators is tested for purity, and the reasons that it is or is not tested are completely arbitrary, with no relation to a defendant's culpability or danger to society."[23] Moreover, the Guidelines only single out certain controlled substances, including methamphetamine, for enhancement based on purity. There is no such distinction for others drug categories such as heroin or marijuana.[24]

"There was once some truth to the Commission's assumption that large quantities are associated with high purities, because methamphetamine was cut as it worked its way down to the street-level dealer or user, but that is no longer the case."[25] Instead, data from the Drug Enforcement Agency show that, from 2011 to 2016, the average purity of one gram of methamphetamine has ranged from a low of 85.5 percent in early 2011 to almost 95 percent in early 2014, and most recently, for the third quarter of 2016, averaged 93.5 percent pure.[26] "Due to increases in the average purity of methamphetamine sold today, purity is no longer an accurate indicator of a defendant's culpability or role in a drug enterprise."[27] Thus, "the Commission's assumption regarding the connection between methamphetamine purity and criminal role is divorced from reality."[28]

The specific facts related to Mr. Robinson in this case do not at all indicate he was a leader, organizer, or high up on any sort of hierarchy in the drug trade. The facts in the PSIR show just

---

[22] *Nawanna*, 321 F. Supp. 3d at 951 (quoting data from the U.S. Drug Enforcement Administration, DEA, 2017 *National Drug Threat Assessment 70* (Oct. 2017)).
[23] *United States v. Nawanna*, 321 F. Supp. 3d 943, 948 (N.D. Iowa 2018)
[24] *Id.*
[25] *Id.*
[26] DEA, 2017 *National Drug Threat Assessment 70* (Oct. 2017)
[27] *United States v. Hartle*, No. 4:16-cv-00233-BLW, 2017 WL 2608221 at *1 (D. Idaho June 15, 2017).
[28] *United States v. Ibarra-Sandoval*, 265 F.Supp 3d 1249, 1255 (D.NM_2017).

the opposite. He stored drugs and did not participate in setting prices or locations for transactions related to those drugs. Moreover, the discovery materials in this case in no way suggest he participated as any sort of importer of drugs across the border where most of these sorts of illegal substances originate. In addition to those specific offense characteristics of Mr. Robinson's involvement in the criminal activity to which he pleaded guilty, the cases cited in this brief and the empirical data those cases reference demonstrate that the policy statement the Sentencing Commission promulgated in Note 27 justifying the ten-to-one disparity between methamphetamine and so-called "'actual' methamphetamine" have not been borne out over time and do not comport with the empirical data related to the overwhelming prevalence of methamphetamine of high purity. For those reasons, we ask this Court to reject calculating Mr. Robinson's guideline range based on this "'actual' methamphetamine" distinction and sentence him based on the standards for methamphetamine.

**WHEREFORE, PREMISES CONSIDERED**, the defense respectfully requests this Court deviate from the United States Sentencing Guidelines and calculate Mr. Robinson's guidelines pursuant to the guidelines provisions for methamphetamine and not "'actual' methamphetamine".

**RESPECTFULLY SUBMITTED,** on this, the 4th day of April, 2022.

_s/E. Carlos Tanner, III_
E. Carlos Tanner, III, Esq., MSB# 102713
TANNER & ASSOCIATES, LLC
Post Office Box 3709
Jackson, Mississippi 39207
601.460.1745 (telephone)
662.796.3509 (facsimile)
carlos.tanner@thetannerlawfirm.com

**CERTIFICATE OF SERVICE**

I, E. Carlos Tanner, III, do hereby certify that on this date, April 4, 2022, I have electronically filed the foregoing Motion for Deviation from the United States Sentencing Guidelines and to Reject Base Offense Level Distinction Between Methamphetamine and "'Actual' Methamphetamine with the Clerk of Court for the United States District Court for the Southern District of Mississippi using the ECF system, which caused notification of that filing to be sent electronically to all counsel of record in this cause.

**ON THIS**, the 4th day of April, 2022.

/s/ E. Carlos Tanner, III
E. Carlos Tanner, III, Esq. (MS Bar No. 102713)
TANNER & ASSOCIATES, LLC
Post Office Box 3709
Jackson, Mississippi 39207
601.460.1745 (telephone)
662.796.3509 (facsimile)
carlos.tanner@thetannerlawfirm.com

FOR THE ACCUSED